The Chicago, Peoria and St. Louis Railway Company *et al.*

*v.*

Marshall P. Ayres *et al.*

*Filed at Springfield March 26, 1892.*

1. Railroads—*power of two or more to make joint contract.* Whether, as a general proposition, corporations may contract joint obligations, there is no doubt of the power of two or more railway companies whose roads form a continuous line, to enter into a joint arrangement for operating their roads as one line, and to become jointly liable for all money borrowed to be used in furtherance of the business of such line.

2. Contract—*alleged to be made "in the fall of 1887"—evidence supporting the averment.* Where the evidence showed that four railroad companies opened an account with a bank on March 6, 1887, and their agreement to pay interest on overdrafts was made some time between that date and the October following, this will be sufficient to support an instruction submitting the question as to the making of the contract in the fall of 1887, as September is regarded as a fall month. Moreover, the dispute was as to the joint liability of the defendants, and not as to the agreement to pay interest.

3. Appellate Court—*judgment of affirmance conclusive as to joint liability of defendants.* The judgment of the Appellate Court affirming that of the circuit court, against several defendants, is conclusive as to their joint liability in an action *ex contractu,* as well as of the other controverted questions of fact.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Morgan county; the Hon. Cyrus Epler, Judge, presiding.

Messrs. Morrison & Whitlock, for the appellants.

Messrs. Brown & Kirby, and Mr. Edward L. McDonald, for the appellees.

Mr. Justice Bailey delivered the opinion of the Court:

This was a suit in assumpsit, brought by Marshall P. Ayres and two others, a banking firm doing business at Jacksonville, under the name of M. P. Ayres & Co., against the Chicago,

Peoria and St. Louis Railway Company, the Litchfield, Carroll-
ton and Western Railway Company, The Jacksonville South-
eastern Railway Company and the Louisville and St. Louis
Railway Company, to recover interest claimed to be due upon
certain advances made by the plaintiffs to the defendants.
The declaration consisted of the common *indebitatus assumpsit*
counts, and the Jacksonville Southeastern Railway Company
and the Louisville and St. Louis Railway Company, having
been served with summons and failing to appear or plead,
were defaulted.     The other two defendants appeared sepa-
rately, and each filed a plea of *non assumpsit*, and also a plea
that it did not jointly undertake or promise in manner and
form as alleged in the declaration, all of said pleas being veri-
fied by affidavit, and issues being joined on said pleas, a trial
was had before the court and a jury, resulting in a verdict in
favor of the plaintiffs and assessing their damages at $2191.91,
and for that sum and costs the plaintiffs had judgment.     The
Chicago, Peoria and St. Louis Railway Company and the Litch-
field, Carrollton and Western Railway Company appealed to
the Appellate Court where said judgment was affirmed, and
by their further appeal, they now bring said judgment of
affirmance to this court for review.

The issue of fact contested at the trial was, whether the
four defendants were all jointly liable upon the indebtedness
for which the suit was brought.     The evidence adduced on
behalf of the plaintiffs tended to show that, on or about March
6, 1887, the four defendant corporations, having formed some
sort of joint traffic arrangement under the name of the "Jack-
sonville Southeastern Line," William S. Hook, who was the
president of all of said corporations, opened an account with
the plaintiffs on behalf of all of said corporations jointly,
under the name of said "Jacksonville Southeastern Line," and
continued said account until about August 6, 1889; that after
March 6, 1887, and prior to October next following, said Hook,
acting on behalf of the corporations forming said "Line,"

agreed with the plaintiffs that they should be paid interest on all advances made by them to said "Line;" that when the account was closed, there was due for interest on advances and overdrafts, after applying thereto a small balance then standing to the credit of the defendants, the sum for which the verdict and judgment were rendered.

As to the amount thus claimed to be due for interest, there was no material controversy, the contention being merely, that at the time the promise to pay interest was made, the railway of the Louisville and St. Louis Railway Company was in course of construction, and was not fully completed until about January, 1888, and it was argued from that fact, as well as from other evidence given on behalf of the defendants tending to the same conclusion, that the last named company was not a party to the promise to pay interest, and so was not liable therefor.    The Louisville and St. Louis Railway Company is shown to have been organized in September, 1886, and there was therefore no legal obstacle in the way of its being a party to said "Line" at the time the joint account was opened with the plaintiffs and at the time the agreement to pay interest was made, and as there was evidence tending to show such to be the fact, the judgment of the Appellate Court is conclusive of the fact of the joint liability of all the defendants, and that question is not open for review in this court.

The only other questions raised by counsel for the defendants relate to the instructions to the jury.    The first three of the instructions given at the instance of the plaintiffs hold, in substance, that two or more corporations may lawfully enter into joint contracts or obligations, and that when they do so, they are jointly liable for the performance of such contracts or obligations, and that a partial performance by one does not absolve such parties from their liability, but that all remain jointly liable for the complete performance of the act or thing agreed upon.

As applied to the facts in this case, we see no substantial objection to the propositions thus laid down.    Without attempting to determine whether, as a general proposition, corporations may contract joint obligations, there can be no doubt, we think, of the power of two or more railway companies, whose railways form a continuous line, to enter into a joint arrangement for operating their railways as one "line," and to become jointly liable for money borrowed to be used in furtherance of the business of such "line."    As applied to the evidence before the jury, the instructions announced correct propositions of law, and even if those propositions should be found to be erroneous as applied to other classes of corporations entering into joint obligations of some other nature, the jury in this case could not have been misled, and the error complained of, if it was an error, was harmless.

The point made that these instructions affirmed the power of two or more corporations to enter into the partnership relation with each other is not well taken, as no such rule is attempted to be laid down.    They merely hold that two or more corporations may enter into and become bound by joint contracts or obligations, but the peculiar contract by which the partnership relation is created is not mentioned or referred to.

The plaintiffs' fourth instruction held, that if "in the fall of 1887," the four defendant corporations were operating a line of railway, and in operating such line, they styled themselves the Jacksonville Southeastern Line, and under that name kept a bank account with the plaintiffs and made an agreement with the plaintiffs to pay them interest on all advances made to the defendants, and that in pursuance of such agreement the plaintiffs permitted said companies to overdraw their account from time to time, the defendants were jointly liable to pay interest on such overdrafts, at the rate of six per cent per annum, and the plaintiffs had the right to charge the defendants such interest in the account with the Jacksonville Southeastern Line.

It is objected to this instruction that it is not applicable to the facts as disclosed by the evidence. The evidence on behalf of the plaintiffs is, that the account with the Jacksonville Southeastern Line was opened March 6, 1887, and the agreement to pay interest on overdrafts was made sometime between that date and the October following. It is said therefore that the hypothesis of the instruction that the agreement to pay interest was made in the fall of 1887 is not supported by the evidence. If said contract was made between March 6 and the following October, it may have been made in the month of September, which is usually reckoned as one of the fall months. But it does not seem to be material at what particular date between March 6 and October 1 the agreement was made, the material question being whether all four of the defendants were parties to it. The defendants' evidence tends to show that the Louisville and St. Louis Railway Company did not complete its railway until January, 1888, and that it did not become a part of said "Line" until that date, while the evidence on behalf of the plaintiffs tends to show that said company was a party to the combination operating the "Line" at the time the account was opened, and at the time the agreement to pay interest was made. Such being the nature of the issue made by the evidence, the precise date of said agreement, whether in September or at some date between March 6 and September 1, seems to be quite immaterial. If the Louisville and St. Louis Railway Company did not join the combination until its railway was completed, it was not a part of the "Line" at the time the agreement was made, whether it was made in the fall or in the summer of 1887.

As to the point made in relation to the modification of the defendants' third instruction, all we need say is, that we have duly considered the suggestions of counsel and fail to find that said modification was in any respect erroneous.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*